GUVINE OLSON, Appellant, v. MODERN WOODMEN OF AMERICA, Appellee.

INSURANCE: Mutual Benefit—Subsequently Enacted By-Laws as Part of Contract—Reasonableness. Agreements to be bound by subsequently enacted by-laws do not embrace such by-laws as *unreasonably* affect the pre-existing and substantial rights of the insured, nor such as *unreasonably* embarrass recovery under the policy. *Held*, a subsequently enacted by-law was *unreasonable* and *void*, which provided that no recovery could be had in the absence of proof of *actual* death, and that no disappearance of the insured, howsoever long continued, should be any evidence of death, until the full life expectancy of the insured had expired.

*Appeal from Polk District Court.*—WM. H. McHENRY, Judge.

SEPTEMBER 29, 1917.

REHEARING DENIED FEBRUARY 13, 1918.

ACTION on a benefit certificate issued to one J. W. Olson, payable upon his death to his wife, the plaintiff herein. Judgment for the defendant in the court below, dismissing plaintiff's petition. Plaintiff appeals. Opinion states the facts.—*Reversed.*

*John L. Gillespie* and *Edwin J. Frisk*, for appellant.

*Truman Plantz, Jesse A. Miller*, and *Geo. G. Perrin*, for appellee.

GAYNOR, C. J.—This action is brought to recover on a certain benefit certificate issued by the Modern Woodmen of America, defendant, on the life of one J. W. Olson. The plaintiff herein is the wife of said J. W. Olson, and the beneficiary named in said certificate. The court below found for the defendant, and dismissed plaintiff's action.

The cause was tried upon stipulated facts.   From the stipulation it appears:

That, on the 27th day of September, 1894, J. W. Olson became a member of said association, and received the certificate sued on.   The certificate provides for the payment of $2,000 to the beneficiary named herein, upon the death of said Olson.   The contract consists of the application, the benefit certificate, and the by-laws of the order.

In the application, Olson agreed that, if he failed to comply with and conform to any and all laws now in force or hereafter adopted, his certificate should be void, and further agreed to make punctual payment of all dues and assessments for which he should become liable, and to conform in all respects to the laws, rules, and usages of the order now in force, or which may be hereafter adopted by the same.   In the application, this question was propounded to him:

"Do you understand and agree that the laws of the order now in force, or hereafter enacted, enter into and become a part of every contract of indemnity between the members and the order, and govern all rights thereunder?"

He answered, "Yes."

The following agreement appears in the application:

"I agree to make punctual payment of all dues and assessments for which I may become liable, and to conform in all respects to the laws, rules and usage of the order now in force, or which may hereafter be adopted by the same; that the foregoing answers and agreements, with the preceding declaration, shall form the basis of the contract between me and the Modern Woodmen of America, and are offered by me as a consideration for the contract applied for, and are hereby made a part of any benefit certificate that may be issued on this application, and shall be deemed and taken as a part of such certificate; that this application may be referred to in said benefit certificate as the basis thereof:

and that they shall be construed together as one entire contract."

The certificate provided that Olson, while in good standing in the fraternity, is entitled to participate in the benefit fund to the amount of $2,000, which shall be paid at his death to Guvine Olson, related to him as wife, subject to all the conditions of this certificate and fundamental laws of this order, and liable to forfeit if said member shall not comply with such conditions, laws and by-laws and rules as are or may be adopted by the head camp of this order, from time to time, or the local camp of which he is a member; and provided that the certificate was issued in consideration of the warranties and agreements made by Olson in his application. The by-laws, at the time the certificate was issued, provided that they might be amended at any special or regular session of the head camp, by a two-thirds affirmative vote of the members present. It was further provided that the beneficiary named in the certificate shall be entitled to participate in the benefit fund to an amount not exceeding the amount stated in the certificate, provided that all the conditions and requirements contained in the certificate and in the by-laws of the society, as the same now exist or may hereafter be modified, amended, or enacted, shall be fully observed and complied with. As will be noted, the certificate in question was issued on the 27th day of September, 1894.

From the stipulation entered into at the trial, it appears: That, on the 19th day of May, 1907, Olson left his home at Grinnell, Iowa, and his whereabouts since then have been and are unknown to the members of his family; that Olson, prior to his disappearance, and the plaintiff, since his disappearance, have paid to the clerk of the local camp of which Olson was a member, all assessments and dues levied on account of the benefit certificate sued on, up to and until the commencement of this action, on the

22d day of April, 1915. There was no proof of the actual death of Olson. The plaintiff relies upon his unexplained absence for seven years from his home and his family, as proof of death. It was further stipulated and agreed on the trial that, if the court found that the defense set up by the defendant in its answer was a good and valid defense, then the final judgment should be entered for the defendant; but if the court found that such defense so set up by the defendant was not good and valid defense, then judgment should be entered for the plaintiff.

The defense proposed is this: The duly and regularly constituted head camp of the defendant revised and amended its by-laws after the issuance of the certificate sued on, and enacted the following:

"Sec. 66. Disappearance No Presumption of Death. No lapse of time or absence or disappearance on the part of any member heretofore or hereafter admitted into the society, without proof of actual death of such member, while in good standing in the society, shall entitle his beneficiary to recover the amount of his benefit certificate, except as hereinafter provided. The disappearance or long-continued absence of any member unheard of, shall not be regarded as evidence of death, or give any right to recover on any benefit certificate heretofore or hereafter issued by the society until the full term of the member's expectancy of life, according to the National Fraternal Congress table of mortality, has expired, within the life of the benefit certificate in question, and this law shall be in full force and effect, any statute of any state or country or rule of common law of any state or country to the contrary notwithstanding."

The term, "within the life of the benefit certificate," as here used, means that the benefit certificate has not lapsed or been forfeited, and that all payments required by the by-laws of the society have been made.

It is the claim of the defendant that this by-law is binding upon the plaintiff, and that, in the absence of proof of actual death, she is not entitled to recover until the full term of Olson's expectancy of life shall have expired, and then only in the event that all assessments have been paid.

It is stipulated that his expectancy, according to the National Fraternal Congress Table of Mortality, is twenty-six years after his disappearance. The question is this: Does this by-law defeat recovery, in the absence of proof of actual death? Of course, if binding on the assured, it is binding on the plaintiff. If it is a by-law which the company had a right to make, by reason of the reserve power in the society and the agreement of Olson, expressed in the application and contained in the certificate, and, when adopted, bound him, then, of course, it is just as effectual against the plaintiff, whose rights all rest upon the certificate, of which the application, by-laws, and constitution of the order are a part. We may assume, for the purposes of this case, that the society had a right to enact this by-law, and that it bound all who came into the order after its adoption. The question before us is, Is the by-law retroactive? Is it effectual to bind those who became members before its adoption, and can it be urged against one who relies upon a certificate issued at a time when this by-law was not in force?

There can be no question, under the authorities, that, in this case, the application and by-laws, together with the certificate, constituted the contract between the assured and the society. There is no question that the assured assented and agreed to be bound by subsequent by-laws; but the reserve power in the society and the consent of the assured must not be construed to give to the company the right, after the issuance of the certificate, to amend its by-laws so as to unreasonably affect substantial rights and contractual obligations already entered into. We think it is

the general holding of the courts that a reservation of power in a mutual benefit insurance company, or the consent of the assured to make future by-laws retroactive in their nature, must be understood to mean the power to make future by-laws which shall be reasonable; and we think it is the general, if not the universal, holding of the courts that, in construing this reserved power or consent, the reserved power or the consent must be construed so as to permit only reasonable by-laws and amendments to be adopted, in furtherance of the contract, and not such as would overthrow or materially alter its terms, or unreasonably affect the substantial rights of the assured under his certificate; that it does not confer upon the society the power to destroy the contractual rights of a member created by the certificate, or to unreasonably impair that obligation, or unreasonably reduce the indemnity which it has promised to pay, or unreasonably embarrass the assured's beneficiary in recovering the amount stipulated in the certificate to be paid, upon the happening of the event therein insured against. It cannot be said to be a reasonable interpretation of such reserved power or agreement, on the part of the member, to say that the assured intended to assent in advance to any changes in by-laws which the insurer saw fit to make, nor can it be a reasonable interpretation of the reserved power to say that such power was reserved in the society. It cannot be a reasonable interpretation of the reserved power to say that, after the issuance of the certificate, the society, by virtue of the reserved power, was thereafter permitted to make any amendments to its by-laws which in fact created a new or different contract from that entered into, or in a material way unreasonably change the contract as to indemnity theretofore entered into, or one which rendered it impossible, under certain circumstances, for the beneficiary to recover on the certificate the amount stipulated in the certificate. Such interpretation would be unreason-

able, and such a by-law would be unreasonable, so inter-
preted; since it would give to the society the power to make
any by-law, even to the extent of destroying the contract
which it had with the assured.

Of course, the assured sustains a dual relationship.
He is a member of the society and interested in its advance-
ment. All laws which relate to its internal regulation, he
is presumed to have consented to, and even without his con-
sent, generally speaking, that power is reserved in those
benefit societies. But he also sustains contractual relation-
ships; and in this, his relationship is antagonistic, so to
speak, to the society. Or, in other words, the general hold-
ing is that, in matters relating to the *conduct* of members,
laws passed after the issuance of a benefit certificate will be
valid and binding upon the member, provided they do not go
to the extent of injecting new conditions into the contract
which will materially change or affect it. It follows, there-
fore, that any by-law adopted after the issuance of the cer-
tificate which destroys or materially and unreasonably af-
fects the rights of the member under the certificate, in so far
as his rights to recover the indemnity provided in the cer-
tificate are concerned, is held to be unreasonable; and this
upon the theory that the reserved power and the consent
will not be deemed to have included such right, and the
assured will not be deemed to have consented to such by-
law's becoming a part of his contract.

Where one has consented to be bound by after-enacted
by-laws, it has been held that an after-enacted by-law, with
which the assured can comply, and it is not unreasonable
to require him to comply, and by complying, preserve the
integrity of his certificate, is valid. So it has been held that
adding to the list of prohibited occupations, under certain
circumstances, is not unreasonable. *House v. Modern Wood-
men*, 165 Iowa 607; *Norton v. Catholic Order of Foresters*,
138 Iowa 464. In this class of cases, the by-law is enacted

for the benefit of the society, for the benefit of its members, and for the purpose of protecting the members from liability for hazards that greatly increase the burden of each member. It is, in its effect, beneficial to each certificate holder as against all others; and it is said in these cases that adding to the prohibited occupations in certain cases is not unreasonable. It is for the benefit of the member, and he can conform himself to it for the benefit of all the other members, and, by conforming, preserve the integrity of his certificate. Of course, it cannot continue the "scaling down and narrowing process until the field of the members' available activities is unreasonably circumscribed." Even these amendments may be carried to such an extent as to unreasonably impair the rights of the insured under the certificate originally issued.

In *State ex rel. Schrempp v. Grand Lodge A. O. U. W.,* 70 Mo. App. 466, it appears that, at the time the certificate was issued, there was no law prohibiting a saloonkeeper or bartender from becoming a member of the order, nor any law prohibiting any member from engaging in either of these occupations. The appellant agreed to be bound "by all rules, regulations and by-laws which are or may be hereafter enacted by said order." Thereafter, the society adopted a by-law declaring that any person "who is now a member of this order shall forfeit his rights as a certificate holder if he engage in the business of keeping a saloon or dram shop, or attending a bar." After the adoption of this amendment, a member began business as a saloonkeeper. The court held that, having agreed in advance to any reasonable change in the by-laws, the member was amenable to this by-law. It is apparent that this was not an unreasonable by-law, because it was made for the benefit and protection of the order, and was one with which the assured could comply, and it was not unreasonable for the society to exact compliance with it even after the certificate was issued, and

this under penalty of losing his rights under the certificate.

The same rule applies as to forfeitures for intemperance. *Ury v. Modern Woodmen of America,* 149 Iowa 706.

It is true that, in *Ross v. Modern B. of A.,* 120 Iowa 692, this court upheld a subsequent by-law, defining what should constitute a broken leg. This case can only be sustained on the theory that the original contract was not unreasonably amended; that the amendment simply undertook to define that which was already covered by the policy. The policy, as originally issued, provided for an indemnity for each broken arm or leg resulting from accident. The amendment undertook to define what was meant by a broken leg, and limited the meaning of the original words to the breaking of the shaft of the thigh bone between the hip and the knee joints, or the breaking of the shaft of both bones between the knee and the ankle joints, and the court said:

"But if it be conceded, for the purposes of this case, that changes in by-laws under such an agreement can only be reasonable, we think the change here should be held valid. * * * There was no previous designation as to what a broken leg meant, and it may have been necessary, for the proper protection of the great body of members, to certainly define what it did mean under the terms of the certificates, and we think such action was not unreasonable."

This case goes to the limit in preserving to the society the right to amend its by-laws, and we are not inclined to extend it. If, under the guise of defining what was meant by the contract, it destroyed a contractual right, and prevented recovery for an accident covered by the contract, without power in the assured to comply, and by complying, protect himself after the amendment, we would think it an unreasonable interference with the vested rights of the assured.

In *Roeh v. Business Men's Protective Assn.,* 164 Iowa

199, the by-law there involved was in force at the time the certificate was issued. This is true also of *Kelly v. Supreme Council of Cath. Mut. Ben. Assn.*, 46 App. Div. 79 (61 N. Y. Supp. 394) ; *Underwood v. Modern W. of A.*, 141 Iowa 240; *Porter v. Home Friendly Society*, 114 Ga. 937 (41 S. E. 45).

In *Apitz v. Supreme Lodge Knights, etc.*, 274 Ill. 196 (113 N. E. 63), an after-enacted by-law was held not unreasonable which provided:

"It shall be the duty of a relief fund member of the order to notify the secretary of his lodge of any permanent change of residence, * * * and to keep the secretary advised of his post-office address. If any such member shall so fail, and shall change his residence or usual place of abode, or shall disappear from the place or neighborhood in which he shall have usually resided, and his residence shall not be known to his family or the secretary of his lodge, and cannot be ascertained after reasonably diligent inquiry, and such disappearance shall be continued for one year, such member shall stand suspended, as in the case of suspension for the nonpayment of assessments or dues. * * * If such member shall reappear, and shall make known his place of abode, and shall desire to become reinstated, he may avail himself of the privilege of the reinstatement law of the order by complying with the requirements of the same."

In that case, the certificate holder had disappeared. His beneficiary sued on the policy. The court held that there was a legal presumption, from his continued absence for seven years, that he was dead, and that the time he was first to be accounted dead was at the end of the period of seven years. The court said:

"In the absence of evidence to the contrary, there is no presumption that death occurred at any particular time; but at the end of the period of seven years' absence, on

the grounds of public policy, the law presumes him to be dead."

It is apparent, therefore, from this case that there was no presumption that the assured was dead at the end of one year. He was presumed to know the by-law enacted after his certificate went into force, and, there being no presumption that he was dead at the end of one year, the presumption of life continued. The presumption, then, is that he was alive at the end of one year. He could have complied with the requirements of this by-law. He could have notified the secretary of his whereabouts, and preserved the integrity of his certificate. He neglected to do this, and his membership became forfeited,—forfeited by his failure to do that which lay in his power to do, knowing the effect of his failure upon his right. It was, therefore, held not to be an unreasonable provision, because he, as a member of the society, was interested in preserving the integrity of the fund provided for death benefits. The by-law affected every member, and was not unreasonable, because it was for the benefit of all the members, and one that any member could reasonably comply with, and preserve the integrity of his certificate.

The same is true of *Elliott v. Hail Assn.*, 160 Iowa 105, 107, in which a subsequent by-law was upheld. The amendment provided that delinquency in payment of an assessment should relieve the association from liability on the certificate while such delinquency existed. This was held a reasonable amendment, because it was one of which the assured had knowledge before the loss, and one with which it was not unreasonable to ask him to comply, and with which he could comply.

The doctrine has been approved by this court that, even when there is an agreement on the part of the assured to be bound by subsequent changes, the society cannot make unreasonable changes by amendment affecting the rights of

the insured as the holder of a benefit certificate. *Fort v. Iowa Legion of Honor,* 146 Iowa 183, 195. In that case this court approved the rule laid down in *Ayers v. Grand Lodge A. O. U. W.,* 188 N. Y. 280 (80 N. E. 1020), as follows:

"An amendment of by-laws which form part of a contract is an amendment of the contract itself, and, when such a power is reserved in general terms, the parties do not mean, as the courts hold, that the contract is subject to change in any essential particular at the election of the one in whose favor the reservation is made. It would be not reasonable, and hence not within their contemplation, at least in the absence of stipulations clearly specifying the subjects to be affected, that one party should have the right to make a radical change in° the contract, or one that would reduce its pecuniary value to the other. A contract which authorizes one party to change it in any respect that he chooses, would, in effect, be binding upon the other party only, and would leave him at the mercy of the former; and we have said that human language is not strong enough to place a person in that situation (citing authorities). While the defendant may doubtless so amend its by-laws, for instance, as to make reasonable changes in the methods of administration, the manner of conducting its business, and the like, no change can be made which will deprive a member of a substantial right conferred expressly or impliedly by the contract itself. That is beyond the power of the legislature as well as the association, for the obligation of every contract is protected from state interference by the Federal Constitution."

In *Plunkett v. Supreme Conclave,* 105 Va. 643 (55 S. E. 9), the certificate issued did not except death by suicide. It was silent on that subject. Subsequently, a by-law was enacted providing that no benefit should be paid the beneficiary of a member committing suicide. The assured had consented to the enactment of subsequent by-laws, and

agreed to comply therewith. The amendment was held good, providing he was sane at the time he committed suicide, the court saying:

"We have not found it necessary to express any opinion as to whether or not the by-law in question in this case would be binding upon members who afterwards became insane, and while insane, committed suicide."

See also *Tisch v. Protected Home Circle*, 72 Ohio St. 233 (74 N. E. 188).

Those cases rest upon the thought that a man has no vested right to commit suicide, and such amendment invaded no vested rights; that, after he received his certificate, it was not unreasonable to require him not to commit suicide if he would secure the benefits of his certificate; and it was a condition to which he could conform.

It would consume too much time to run through all the cases holding after-enacted by-laws retroactive in their effect, or otherwise. We think that, in nearly every case in which it is held that the subsequently enacted by-law was retroactive, and binding upon the assured and his beneficiary, the requirements related to the conduct of the assured, were made during his lifetime, were for the benefit of the organization and for the protection of the assured, as a member of the organization, and were of such character that the assured could be reasonably required to conform to them; and that it was not unreasonable to require him to conform, in order to preserve his rights under the certificate.

The by-law in question in this case is of such a character that neither the assured nor his beneficiary could comply with it. Assuming that it lay in the power of the beneficiary to make proof of death such as the seven-year law contemplates, and that it was impossible for her to make proof of actual death, this by-law defeats her.

Appellee makes some question as to the sufficiency of

the proof set out in the agreement, to establish a right to recover on the basis of seven years' absence; but we are not considering that question, inasmuch as the stipulation provides that, if the by-law hereinbefore set out is not binding on the plaintiff, then she is entitled to recover; if binding, she is not. We must assume, therefore, that, if the case had gone to trial, the proof was forthcoming to establish a basis for the recovery on the ground of seven years' absence, if this were permissible in the face of the by-law.

In all cases in which reliance is had upon the absence of the assured for seven years, and proof is not sufficient, under the law, to establish the fact of death, because not sufficient to raise a presumption of death, there is no occasion for invoking this amendment. It is invoked and can be used only where the beneficiary is able to make the proof which the law requires. In discussing that rule it is said:

"In order that the presumption of life may be overcome by the presumption of death, there must be evidence, not merely of absence from home or residence for a period of seven years, but there must be lack of information concerning the absentee, on the part of those likely to hear from him, after diligent inquiry."

Greenleaf, in discussing this question, says:

"Among the circumstances material to this issue are the age of the party, his situation, habits, employment, state of health, physical constitution; the place or climate of the country whither he went, and whether he went by sea or land; the facilities of communication between that country and his former home; his habit of correspondence with his relatives; the terms of intercourse on which he lived with them; in short, any circumstances tending to aid the jury in finding the fact of life or death. There must also be evidence of diligent inquiry at the place of the person's last residence in this country, and among his relatives and any

others who probably would have heard of him, if living, and also at the place of his fixed foreign residence, if he was known to have had any." 2 Greenleaf on Evidence, Section 278f.

Of course, the character of the inquiry, the persons to whom the inquiry is addressed, and the places where it must be made, are all to be determined by the circumstances of each particular case, with the obligation on the person to be benefited by the death of the absentee to exclude, by the best evidence obtainable, with as much certainty as possible, reasonable belief in the continuance of life.

In *Modern W. of A. v. Gerdom*, 72 Kan. 391 (82 Pac. 1100), that court said:

"It is true that death may be proved by circumstantial evidence, and that absence for a considerable period of time is not indispensable in order to generate a satisfying conviction of the fact. But in all such instances, the death of the absent party must fairly be demonstrated by the circumstances of the disappearance. If, for example, in connection with other facts showing a want of motive for absence, it should appear that the missing person was on a vessel which foundered, or a train which was wrecked, or engaged in some hazardous enterprise, or met with an accident which might be expected to result fatally, or was exposed to perils incompatible with his age or the state of his health, or was afflicted with a fatal disease, or was mentally infirm, or was suicidally inclined, belief in the fact of death might be forced upon the mind very soon after the disappearance. And in some cases, the age, health, disposition, moral character, domestic relations, social rank and financial condition of one who suddenly disappears, may themselves, without the aid of other circumstances, stifle all doubt that the person is dead. Such, at least, is the view of most of the courts of last resort."

Of course, this proof raises a legal presumption that

he is dead, but it is a rebuttable presumption. Now it is apparent that, if this proof could be made, then, recognizing this amendment as binding, recovery could not be had. If this proof were made, it is apparent that it would be impossible to prove the death in any other way. An insurmountable barrier is placed by this amendment in the way of recovery, because the condition on which recovery rests (death) is incapable of proof, under this amendment. Eliminating this seven-year rule, and destroying its efficacy as proof of death, the payment of the premium is postponed until twenty-six years after his disappearance, and the burden placed upon the assured of paying the premium during all these years, to secure the benefits of the certificate. There is no presumption as to when he died, arising from the proof of absence. The law steps in at the end of seven years, proper proof attending his absence being disclosed, and says that he is now dead. His policy is mature. His beneficiary has a right to recover. Though this rule has its foundation in reason, and is founded upon a knowledge of the ways of men, yet the amendment says to the plaintiff, "You cannot recover on such proof until twenty-six years have elapsed after the disappearance," thus casting on plaintiff the burden of paying all dues and assessments during that time, and thereby making the certificate practically worthless. The rule of seven years' absence rests upon sound public policy. Those interested in the death are in no position to prove actual death. They must rest their case on the circumstance of absence, if they would prove the death at all. The fact that his whereabouts were unknown for seven years, the fact that by inquiry they could get no trace of him, the fact that they cannot prove that he is actually dead, by eyewitnesses, or those who can swear positively to the fact of death, makes it impossible to prove the ultimate fact upon which liability rests, and postpones the payment nineteen years, though proof can be furnished,

and is offered, which would satisfy any reasonable mind that the ultimate fact exists.  We think the rule is unreasonable, and ought not to be recognized and enforced by this court.

In *Samberg v. Knights of Modern Maccabees,* 158 Mich. 568 (123 N. W. 25), the court had before it the question here under consideration.  The beneficiary relied upon absence and disappearance for seven years as proof of death.  The defendant interposed as a defense a by-law enacted after the certificate was issued, in effect substantially the same as the one under consideration here.  The court said:

"This certificate is made payable to the beneficiary named therein 'upon satisfactory proofs of death.'  [The assured had agreed to be bound by all laws, rules and regulations now or hereafter in force.]  We have already quoted the statute in relation to the presumption arising from seven years' absence without intelligence concerning the person.  It was undoubtedly enacted to meet a necessity growing out of the experience of men.  This rule has also been recognized in the absence of a statute.  See *Heagany v. Nat. Union,* 143 Mich. 186 (106 N. W. 700).  *  *  *  It cannot be said that the insured, in subscribing to his application, contemplated the adoption of a by-law that would have the effect to render the provisions of a wholesome statute nugatory, and to have the further effect of making it practically impossible to make proofs of death in cases within the occasional experience of men.  *  *  *  We hold that the by-law, so far as this case is concerned, is an unreasonable one."

The time for the maturity of the certificate was not stated in the original certificate.  It was payable upon proof of his death.  His death can be proven by circumstances which the law recognizes as sufficient to establish the fact of death, or at least to raise a presumption of the fact of death,—a presumption that he was dead at the end of the

seven years. So we say that this was an unreasonable by-law, and one that placed an obstruction in the way of proving the ultimate fact (the death) by methods known to the law at the time of the issuance of the certificate, and one with which the beneficiary of the assured, the one for whose benefit the certificate was taken, could not comply, under the circumstances shown in this case.

The defendant's position is that death, which alone matures a policy, cannot be shown in this case, and that the right of the beneficiary to recover is postponed for nineteen years because of this amendment to the by-laws, and that recovery can be had at the end of nineteen years only upon proof of the fact of the continued absence of the assured during that time, and the payment by the beneficiary of all dues and assessments necessary to keep the certificate alive until the expiration of that time.

It will be noted that this by-law was passed in September, 1908; that the assured disappeared May 19, 1907, more than a year before the by-law was enacted, and about four years after the certificate was issued. This fact emphasizes and makes certain to our minds that the by-law invoked by the defendant as a defense is unreasonable, and ought not to be sustained in this case. It is our judgment. therefore, that this by-law is unreasonable, being enacted after the certificate was issued, after assured had disappeared, and is, therefore, not binding upon the assured or his beneficiary; and the cause is—*Reversed*.

LADD, WEAVER, PRESTON, SALINGER, and STEVENS, JJ., concur.