MARY HAINES, Appellee, v. MODERN WOODMEN OF AMERICA,
Appellant.

DEATH: Presumption from Seven Years' Absence.   No particular
1   standard of "search or inquiry" exists in this state in order
    to generate a presumption of death by reason of a person's
    unexplained absence for seven years.   A showing of such
    absence usually presents a jury question.

INSURANCE: Limitation on Action.   An action brought on a
2   beneficiary certificate of insurance, some eight years and three
    months after the unexplained disappearance of the insured,

is not barred by a policy provision which prohibits such action after eighteen months from the death of the insured. Seven years' unexplained absence of a party generates no presumption that a party died at any *particular* time.

**INSURANCE:** Unreasonable Changes in By-Laws. An advance
3 agreement by an insured in a fraternal benefit certificate, to be bound by future changes in the constitution and by-laws of the society, does not authorize a change, even before the insured has disappeared, which provides:

1. That disappearance of the insured shall create no presumption of death until it has continued for a period of time equal to his life expectancy at the time of disappearance; and

2. That, in case of disappearance, no liability shall attach under the certificate, unless payments of assessments, dues, etc., are continued up to the close of such member's life expectancy.

**INSURANCE:** Contract Rule of Evidence. An insurer may not,
4 after the issuance of a policy, and under a reserved contract power to adopt and change by-laws, provide that "disappearance" of the insured, however long continued, shall not be evidence of death.

*Appeal from Sioux District Court.*—WILLIAM HUTCHINSON, Judge.

SEPTEMBER 29, 1920.

ACTION at law to recover upon a life insurance benefit certificate. There was a trial to the court without a jury. Judgment for the plaintiff, and defendant appeals.— *Affirmed.*

*Truman Plantz, George E. Perrin,* and *Herbert W. Brackney,* for appellant.

*C. E. Grant,* for appellee.

WEAVER, C. J.—The defendant is a fraternal society, which provides its members with life benefit certificates. On July 14, 1905, the society admitted to its membership

one William A. Haines, and issued to him a benefit certificate, payable at his death to his mother, Mary Haines, plaintiff in this case. At the date of this transaction, Haines was about 19 years of age, living with his parents, and working with his father at the carpenter's trade. He continued in the family home and in his employment as a carpenter with his father until October 16, 1909, a period of a little more than four years, and, so far as is known, never married. The family home was in Hawarden, where he had lived from childhood, and was well acquainted with the people of the vicinity. On the date last named, he left Hawarden, simply saying he was going away, but does not appear to have made any declaration whether his departure was intended to be permanent or for some temporary purpose. He has never returned, and never communicated with his parents or friends, by letter or otherwise. Three or four days after he left, an acquaintance saw him briefly in Omaha, Nebraska, as he was taking a train to some other destination; and shortly afterwards, a niece of his mother's, residing in central Illinois, where there were some family relatives, wrote to the mother, saying that William had been there. This appears to be the last item of information concerning the young man. He left a small deposit of money in the bank at Hawarden, which he has never drawn or called for. His carpenter tools were left on the job where he last worked. One of the brothers of his mother, living in Illinois, made an effort to find him, and visited Chicago in the quest, on several occasions. His father, upon information or rumor that he was at some place in Nebraska, went there to verify the story, and found it to be a mistake. A notice was inserted in a union labor journal, published in San Francisco. There is no word in the evidence to indicate that his relations with his parents or members of the family were other than amicable and pleasant, or that he was dissatisfied with his social surroundings, or had other cause to cut off all connection with his home and the friends and companions with whom his entire life had been spent. Payments of his dues and assessments in the defendant society

were kept up by his parents from the time of his disappearance until this action was begun.

On January 18, 1918, the plaintiff, acting upon the presumption that her son was dead, made proof thereof in writing to the defendant, by evidence of his disappearance and continued absence for a period of more than seven years; but the defendant, though receiving the proofs, has refused to recognize them or to act thereon, has made no demand or request to the plaintiff to furnish other or additional proof, and has not designated or pointed out any objection on its part to the sufficiency of the proof so submitted by the plaintiff.

To the plaintiff's petition, alleging her cause of action substantially as above stated, the defendant answered, admitting the membership of William A. Haines, and that plaintiff is the beneficiary named in the certificate issued to him, but denies that said member is dead.

Further answering, the defendant pleads that, by the terms of its contract with William A. Haines, he agreed to be bound by the by-laws of the society then in force or thereafter enacted, and that among said by-laws was one providing that no action for the recovery of a death claim on a benefit certificate can be brought or maintained more than 18 months after the member's death; and it is alleged that this action was not brought within that limitation.

Defendant further pleads that, by the terms of the contract with the said Haines, he agreed to be bound by the by-laws of the society then in force, and such other by-laws as might thereafter be adopted; that, pursuant to such reserved authority, the society did thereafter, on September 1, 1908, enact a by-law reading as follows:

"Sec. 66. Disappearance No Presumption of Death. No lapse of time or absence or disappearance on the part of any member, heretofore or hereafter admitted into the society, without proof of the actual death of such member, while in good standing in the society, shall entitle his beneficiary to recover the amount of his benefit certificate, except as hereinafter provided. The disappearance or long-continued ab-

sence of any member, unheard of, shall not be regarded as evidence of death, or give any right to recover on any benefit certificate heretofore or hereafter issued by the society, until the full term of the member's expectancy of life, according to the National Fraternal Congress Table of Mortality, has expired, within the life of the benefit certificate in question, and this law shall be in full force and effect, any statute of any state or country or rule of common law of any state or country to the contrary notwithstanding. The term 'within the life of the benefit certificate,' as here used, means that the benefit certificate has not lapsed or been forfeited, and that all payments required by the by-laws of the society have been made."

Because of this by-law, it is insisted by the defendant that the testimony tending to show the disappearance and absence of the insured person for more than seven years is not admissible as evidence of his death, and that plaintiff's action must, therefore, fail for want of proof on which to base a recovery of the insurance.

Finally, it is alleged that, by the terms of the certificate sued upon, no action can be maintained to recover the insurance until proofs of death have been filed "and passed upon by defendant's board of directors," and that no proofs of death of the said William A. Haines have been passed upon by such board.

On the issues thus joined, the court found for the plaintiff for the full amount of the benefit provided for in the certificate sued upon, and judgment was entered accordingly.

I. It is first argued for the appellant that the presumption of death from disappearance and continued absence of seven years does not arise unless it be further shown that the missing person has been diligently sought and inquired after without avail, and that there is in this case a failure of such proof.

1. DEATH: presumption from seven years' absence.

There is considerable variance in the views of the courts upon this feature of the rule. By some, the idea expressed by appellant's counsel is ap-

proved, and the party relying upon the presumption must show a high degree of diligence in making inquiry and search. By others, it is distinctly held that proof of disappearance and continued unexplained absence for seven years, without being heard from by those with whom, in the natural course of things, the person would be likely to communicate, is all that is necessary, and that the presumption is not rebutted or overcome by a failure to show specific acts of search or inquiry. *Miller v. Sovereign Camp W. O. W.*, 140 Wis. 505 (122 N. W. 1126) ; *Page v. Modern Woodmen*, 162 Wis. 259 (156 N. W. 137).

In none of our cases have we gone to either extreme. We have said that:

"When the absence is shown to have continued for seven years or more, unaccompanied by circumstances which reasonably account for his disappearance on a theory not involving his death, it becomes sufficiently strong to cast the burden of rebutting it upon the party asserting a continuance of life. *   *   * Slight evidence may sometimes be sufficient to rebut the presumption of death; but ordinarily it is a question for the triers of fact to determine whether the presumption shall prevail. In short, the circumstances both for and against the theory of death are to be taken into consideration, and therefrom the truth arrived at as nearly as may be possible, under the established rules of law governing the adjudication of disputed facts." *Magness v. Modern Woodmen*, 146 Iowa 1, 5.

Such is also the effect of our recent decision in *Richey v. Sovereign Camp W. of W.*, 184 Iowa 10. And see *Kennedy v. Modern Woodmen*, 243 Ill. 560 (90 N. E. 1084). The strength of the presumption so arising may, of course, be augmented or weakened by the evidence or lack of evidence on the subject of search or inquiry made for the missing person; but, when the disappearance is shown to have continued for seven years or more, without communication with his family and friends, and without any showing of circumstances which would naturally lead him to conceal his location from those to whom he is bound by ties of blood, af-

fection, and friendship, it presents at least a question of
fact, on which the finding of the jury, or of the court sitting
in place of the jury, cannot be set aside on appeal, as being
without support.  The undisputed record sufficiently sus-
tains the plaintiff's case in this respect.

II.  It is also contended that, under the limitation of 18
months provided for in the defendant's by-laws, this action
is barred, without respect to any question upon the merits.

2. INSURANCE:
limitation on
action.

The same objection was raised under quite
similar circumstances in the *Richey* case, and
was there overruled.  While proof of disap-
pearance and absence for seven years or more
raises a presumption of the person's death, it raises no pre-
sumption as to the date or time after the disappearance that
such death occurred.  The defendant is not shown to have
suggested at any time the death of Haines, but went on
treating him as a living member, and receiving from his par-
ents payment of his dues and assessments up to the time
when plaintiff presented proofs on which the claim of death
benefits is based; and we think the appellant is in no posi-
tion to escape the obligation of its contract by a plea of the
contract limitation of plaintiff's right of action.

III.  We come now to appellant's main contention, which
is that By-law No. 66, enacted in 1908, three years after
Haines received the certificate sued upon, became a part of

3. INSURANCE:
unreasonable
changes in
by-laws.

the insurance contract, and that, by reason
thereof, there can be no presumption of his
death until his disappearance has continued
the full term of his expectancy life, a period
of 43.3 years, during all of which time the policy must be
kept alive by payment of all dues and assessments, to the
same extent as would be necessary to keep the certificate in
force, were the member admittedly living.  On the assump-
tion that this modification of the contract and legal
rights   of   the   parties   is   sustainable,   it   effects   a
most   radical   change   in   the   protection   which   the
insurance afforded to the insured and his beneficiary.
It is true that the beneficiary in such a certificate

has no vested right therein during the member's life: that is, the society and the member may at will change the beneficiary, or may by agreement cancel or modify or change the terms of the contract; but it is no less true that the insurer cannot, of its own will, and without the consent of the insured, absolve itself from its contract obligation to pay the promised benefit to the beneficiary on the death of the insured. That a benefit society may, under a reserved power, such as existed in this case, make by-laws binding upon its membership, is to be conceded; but it is equally well established that such reserved authority is not unlimited. We have held that such reservation as to subsequent by-laws is limited in its effect to those matters relating to the internal government of the society, and not to matters of contract between the association and its members. *Jordan v. Insurance Co.,* 151 Iowa 73, 85; *Parish v. New York Produce Exchange,* 169 N. Y. 34. And in any event, the exercise of the power of amendment as to existing members must be reasonable in character, to be given effect, and not operate to impair the essential obligation of the society to make good its contract to pay a stated benefit, on the death of the member in good standing. *Hobbs v. Iowa Mut. Ben. Assn.,* 82 Iowa 107; *Sieverts v. National Ben. Assn.,* 95 Iowa 710; *Farmers Mut. Hail Ins. Assn. v. Slattery,* 115 Iowa 410; *Fort v. Iowa Legion of Honor,* 146 Iowa 183, 193.

The doctrine of these cases has been so often reaffirmed by us, and is so generally sustained by the great weight of adjudicated cases in other courts, that it would be a waste of time to attempt anything like an exhaustive citation of them, or to burden this opinion by extensive quotations from the opinions. They have recently been considered by us in *Richey v. Sovereign Camp W. of W.,* 184 Iowa 10, and *Olson v. Modern Woodmen,* 182 Iowa 1018, in both of which cases the appellant herein was defendant, and the effect of the same amendment, "Section 66," upon its by-laws was considered, in the light of the established precedents. In each of these cases, action was brought upon a benefit certificate issued before the amendment to the by-laws was enacted. In

each, the proof of death relied upon by the plaintiff consisted of testimony showing that the insured had disappeared from his home, and had been continuously absent for a period of seven years or more, without tidings from him; and in each, the amendment to the by-laws was pleaded, as removing or negativing the presumption of death which, but for such enactment, would arise from the evidence offered. It so happens, however, that, in each of these cases, the date of the disappearance of the insured was prior to the adoption of the by-law, but before the period of seven years had elapsed. The opinions in these cases consider the merits of the defense so raised, and in both it was overruled.

To differentiate the instant case from these precedents, appellant relies upon the fact that, while the amendment was not adopted until more than three years after the certificate now in suit was issued to Haines, yet it was adopted about a year before the date when he disappeared, and from this circumstance it is argued that the defense is available. It will be seen that the issue so presented is a narrow one. In disposing of it, we need not consider or attempt to decide what the effect of such a provision would be, if it had been embodied in the by-laws existing at the time Haines became a member of the society, and we therefore confine our discussion to the effect of the after-enacted amendment upon the rights of an existing member and his beneficiary, under the contract of insurance.

To render the amendment valid, it must not be unreasonable, and must not materially impair or detract from the contract obligation of the society which enacts it. Ordinarily speaking, the right of the beneficiary to recover upon a certificate becomes perfect upon proof of death of the member in good standing. Death is a fact to be proved, and may be established by evidence which is competent and admissible under the law of the jurisdiction in which the case is tried. Ordinarily, too, it is for the court alone to say what is competent evidence, and for the jury alone, or for the court, sitting in place of a jury, to say whether the fact of death has been proven. When this certificate was issued, it

was the law of the state, and of the different states generally, that proof of the disappearance of a person from his home and of his continued absence for seven years or more, without tidings from him, raises a presumption of his death, and that, if such presumption be not rebutted or overcome, it will sustain a finding that such person has departed this life. Under the well-established rule of law, Haines's beneficiary would have made a perfect case for a recovery upon his certificate, by proof that he left his home and has been lost to the sight and knowledge of his family, friends, and acquaintances for seven years. By the amendment to its by-laws, if it is to be held effective, the defendant makes it impossible for the beneficiary to recover until she has waited 43 years, six times the period which the law of the land has settled upon as being reasonably sufficient for that purpose. Not only that, but, to preserve the right to her or her heirs, she or they must continue to pay his recurring dues and assessments to the remote end of that term. If this be not an unreasonable exercise of the reserved power of amendment, it would be difficult indeed to frame one sufficiently extravagant to fall within that category. Precisely in point is the language of this court in the *Richey* case, where we said:

"The change which the association asserts to be a binding one engrafts upon the original agreement a condition that, although the law of the state makes disappearance for a stated time presumptive evidence that the assured has died, such statute shall not be effective, and that, moreover, no payment shall be due, no matter how long the disappearance has continued, unless the premiums be paid for the number of years which form the expectancy of the insured. In the instant case, this means that, unless proof of actual death becomes available, payments under the certificate sued on by plaintiff would have to continue for nearly 40 years yet, and possibly for a time many years longer than there would have been obligation to pay under the conditions of the certificate as it stood originally. It does not seem to be strained to say that such a change is so unreasonable

as that it was never intended to be covered by the general advance agreement to be bound by future changes, and that, as plaintiff pleads, to uphold the amendment is violative of statute and public policy."

So, too, in the *Olson* case, 182 Iowa 1018, 1033, after discussing the rule raising a presumption of death after a disappearance of seven years, we said:

"Though this rule has its foundation in reason, and is founded upon a knowledge of the ways of men, yet the amendment says to the plaintiff, 'You cannot recover on such proof until 26 years have elapsed after the disappearance,' thus casting on plaintiff the burden of paying all dues and assessments during that time, and thereby making the certificate practically worthless. The rule of seven years' absence rests upon sound public policy. Those interested in the death are in no position to prove actual death. They must rest their case on the circumstance of absence, if they would prove the death at all. The fact that his whereabouts were unknown for seven years, the fact that by inquiry they could get no trace of him, the fact that they cannot prove that he is actually dead, by eyewitnesses, or those who can swear positively to the fact of death, makes it impossible to prove the ultimate fact upon which liability rests, and postpones the payment 19 years, though proof can be furnished, and is offered, which would satisfy any reasonable mind that the ultimate fact exists. We think the rule is unreasonable, and ought not to be recognized and enforced by this court."

More than this need not be said.

The reasons assigned by us in the cited cases for holding the amendment invalid are rendered no less apparent and no less persuasive because of the fact that the change was made a short time before, instead of after, Haines' disappearance. The rule against unreasonable amendments protects the member just the same, wherever he may be. True, it is said by us in the *Olson* case that the fact that the insured had disappeared before the amendment was made "emphasizes and makes certain to our minds that the by-law invoked by

the defendant is unreasonable;" and undoubtedly it does lend emphasis to the conclusion, but it is in no wise essential thereto.

IV. The application of the amendment to this case is further upheld by counsel on the theory that it is competent for the insurer to prescribe rules of evidence by which a claim against it shall be established. In support of this position, reliance is had upon *Roeh v. Business Men's Prot. Assn.*, 164 Iowa 199. That the parties to a contract may, within limitations, and by mutual consent as a part of such contract, agree upon the probative effect of any given fact, or upon what shall be sufficient evidence of a fact, need not here be denied. The extent to which such rule, if there be one, may be upheld, we shall not pause to consider, because the record in this case does not require it. It may safely be said, however, that, until such agreement be clearly shown, the courts will be very slow to abdicate their most important function of determining the truth by the tests and rules presented by centuries of judicial experience.

4. INSURANCE: contract rule of evidence.

The *Roeh* case furnishes no likeness or parallel to this. There, the by-law providing that there should be no liability for the death of a member by the discharge of a firearm unless the accidental character of the discharge be established by the testimony of at least one eyewitness, was not an amendment adopted after the certificate issued, but was in existence at the time, and we may assume that the contract was made with that fact in view. Had the restriction so provided upon the right to recover been an afterthought by the insurer, and engrafted upon the by-laws after the contract of insurance was made, we may be very sure that the ruling thereon by this court would have been different. The authorities cited in the *Roeh* case in support of its conclusion fairly indicate that the effect now sought to be given to it was not in the court's mind. The authorities referred to are, first, to the effect that a party may, by contract, agree to the time within which suit thereon must be brought; second, he may waive a jury trial; and third, he may waive his

right to recover damages for negligence of another: all of which may be readily admitted, for they are propositions not affording the slightest authority for a by-law providing a rule of evidence inconsistent with the established law of the state. The citation in the same case, of *Russ v. Steamboat War Eagle,* 14 Iowa 363, as a precedent upholding a contract providing a rule of evidence, appears to have been an oversight; for a reading of the opinion wholly fails to reveal any such contract or ruling.

To say the very least, the right to thus deprive the court of the exercise of its ordinary functions, and to add to or take from a proved fact the probative force and effect to which it is otherwise naturally entitled, is one which will be hedged within very narrow bounds. To hold otherwise, and permit the insurer to restrict its liability by arbitrarily enlarging or minimizing the effect of competent evidence, is to arm it with power which renders practically worthless the protection which it professes to furnish to the insured. See *Traiser v. Commercial T. E. A. Assn.,* 202 Mass. 292 (88 N. E. 901); *Noyes v. Commercial T. E. A. Assn.,* 190 Mass. 171 (76 N. E. 665); *Utter v. Travelers' Ins. Co.,* 65 Mich. 545 (32 N. W. 812); *Fidelity & Cas. Co. of N. Y. v. Crays,* 76 Minn. 450 (79 N. W. 531); *Fidelity & Cas. Co. of N. Y. v. Eickhoff,* 63 Minn. 120 (65 N. W. 351); *Hannon v. Grand Lodge A. O. U. W.,* 99 Kans. 734 (163 Pac. 169).

In the *Utter* case, supra, the policy provided that the insurance should not extend to any case, unless the claimant showed the death or injury and its accidental character "by direct and positive proof." The point being made that the proof offered was circumstantial only, and not "direct and positive," the court says:

"Courts will not permit the course of justice, upon trials before them, to be stipulated or contracted in such a manner as to defeat the ends to be subserved by such trials. The parties to a contract cannot agree to oust the courts of jurisdiction over such contract. The operation of this clause, requiring direct and positive proof, in many cases, would, in effect, preclude the court from jurisdiction, and bar a

recovery. If they can make this agreement, they can also
stipulate that the evidence must come from certain persons,
or make any agreement they see fit, controlling and direct-
ing the course of proceeding upon the trial."

Even more directly in point is the *Hannon* case, supra,
from the Kansas court. As in this case, the plaintiff there
sued upon a benefit certificate, issued to a member of the
defendant society, and sought to establish the member's
death by proof of his disappearance and absence for a period
of more than seven years. After the certificate was issued,
the society adopted a by-law in these words:

"Mysterious disappearance or unexplained absence of a
member shall never be considered proof or evidence of death
of such member."

There was a jury trial. The trial court, in its charge to
the jury, said:

"This by-law, as far as it controls or governs the action
of the A. O. U. W. in determining whether a member is dead,
would be binding; but you are instructed that no by-law of.
the association can control or prevent the courts and juries
from applying the usual rules of evidence in the trial of
cases coming properly before them; and, in arriving at a
verdict, you are not bound thereby, and may disregard the
same."

On appeal, the Supreme Court approved this instruction,
saying:

"The power of the association to make the by-law in ques-
tion binding upon one who was already a member, depends
upon whether or not it was reasonable, as applied to him.
(*Uhl v. Life & Annuity Assoc.*, 97 Kan. 422, 155 Pac. 926).
If it were to be given effect in the trial of an action brought
upon the beneficiary certificate previously issued to such a
member, it would amount to a declaration of a rule of evi-
dence to be applied by the court to the determination of a
question of fact—a regulation of the amount and character
of evidence by which such fact might be determined. It is
one of the functions of a court, where the rights of the
parties to a controversy turn upon a disputed matter of fact,

to investigate and decide, for the purpose of that case, the question at issue. Its decision may be mistaken, but it is binding on the parties to the litigation, because it is necessary that some final settlement of the disagreement should be had. That the probability of correctness may be increased, rules of evidence, which experience is thought to have shown to be salutary, have been established. One of them is that the unexplained absence of a person for a period of seven years, during which time he has not been heard from, although inquiries concerning him have been diligently prosecuted, is sufficient to raise a presumption of death. The courts do not assume to say that mere absence or disappearance shall ever be given the effect of death, but that disappearance and absence for a fixed period, accompanied by certain other circumstances, may constitute prima-facie evidence that death has actually taken place. For the fraternal association to require a court to disregard that rule, in an action where one of the issues is whether a member, to whom it had issued a certificate payable at his death, is living or dead, would be substantially to impose upon that tribunal a new method of procedure, much as though it were to direct that death was not to be regarded as having taken place unless it should be proved beyond a reasonable doubt, or by the testimony of witnesses who saw the corpse and identified it from personal acquaintance with the member. We think that such a regulation as applied to existing certificates is unreasonable, and therefore transcends the power of the association."

We regard this a pre-eminently safe and sound doctrine. Once grant the insurer the right to limit its liability upon an existing contract by the enactment of by-laws which deprive the insured of the benefit of the established and settled law of evidence, and a door is opened to intolerable abuse. Under the guise of establishing a rule of evidence, the society may, in effect, absolve itself from all liability for the performance of its agreements. Such is, indeed, its practical effect in the case before us. When the contract was made, it was, and still is, competent, under the law of the state, to

establish the fact of death by proof of certain facts from which such a presumption arises. This right was a material element or factor in the value of the promised benefit to the member and his beneficiary. Permit the insurer, by its own arbitrary act, to declare that it will not pay the benefit upon such legitimate proof as will satisfy a court of justice of a member's death, nor will it pay at all, except upon performance of a condition which cannot be satisfied in an average lifetime, and then only on the further condition that, during all such period, the beneficiary shall continue to pay a burdensome tribute into the insurer's treasury, and you will leave nothing of value in a contract of fraternal insurance of which the member may not be "fraternally" despoiled, at the uncontrolled will or whim of the insurer.

It may be true, as suggested by counsel, that the society has been confronted with a large number of death claims based upon the disappearance and continued absence of members, and that this amendment to the by-laws is intended simply as a protection against fraudulent demands of that character. But the question before us here is not simply one of good faith or honesty of purpose. It is, rather, a question of power and authority and contract obligation. The society undertakes to insure payment of certain benefits on the death of the member. The contract in this case does not restrict the benefit to cases of death from certain specified causes, nor does it except from its obligation cases of death from other specified causes.

It is the death of the member in good standing which matures the contract, and vests a right of action in the beneficiary. Death may come to the member in any of its myriad forms. He may die in his bed, of disease or injury, and under circumstances which may be established by evidence of the most direct and positive character. So, too, he may be lost in a storm at sea, in a mine disaster, in a great flood, in the havoc of an earthquake ruin, or may perish in the desert or trackless forest, or among utter strangers, and his beneficiary be utterly unable to produce a single witness who saw him die, or saw his dead body, or can offer a word of

direct testimony to the fact of his decease.  But death in any form matures his insurance, and fixes the liability of the insurer, and proof thereof by competent circumstantial evidence which satisfies the minds of the triers of fact, entitles the beneficiary to recover, even though there remains a bare possibility that a person so proved to be dead is, in fact, still alive.  So far as that is concerned, there is room for mistake or fraud even where the evidence is wholly direct and positive; for honest witnesses may be in error, and others may commit deliberate perjury.  What the law requires, and what is implied in every contract of insurance upon a human life, is that the insurer will pay the indemnity or benefit on such proof as establishes the fact, according to competent evidence, judicially tested and weighed according to the law of the land; and this contract, once made, is immune against any action by the insurer tending to its material impairment.

That there are cases tending to support the appellant's theory of the law may be freely admitted; but we are persuaded that they are unsound in principle, and that the general recognition of their authority would, in the end, work to the serious disadvantage of the insurance societies and orders, the permanent success and usefulness of which must depend upon the general confidence they inspire in the estimation of the public to which they appeal for patronage.

We are satisfied that adherence to the views we have so often expressed in our former decisions above cited, as well as others therein mentioned, compels the conclusion that the record in this case shows no reversible ruling; and the judgment of the district court is, therefore,—*Affirmed*.

LADD, STEVENS, and ARTHUR, JJ., concur.