MARGARET A. FLOYD, p. a. *vs.* GEORGE J. MEDROES *et al.*

MAY 27, 1935.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ

Moss, J. This is an action of assumpsit brought for the sum of $300 which the plaintiff claims the Cigar Makers' International Union of America, an unincorporated labor union, owes her as the beneficiary of a death benefit or life insurance payable, she contends, by reason of the death of her grandfather, John H. Floyd, a member of that union. Jury trial was waived and the case was heard by a justice of the superior court, who upon the evidence rendered a decision for the defendants. The case is now before this court upon the plaintiff's exception to that decision.

The only question which we need to consider is whether any contract for such death benefit or life insurance was in force between the union and Mr. Floyd at the time of his death on December 22, 1933. He was then a class A member in good standing and the plaintiff contends that such a contract was in force by reason of the following section of the constitution of the union as it stood in 1932:

> "Sec. 70. Life insurance (or death benefit) in the sum of $300.00 is hereby provided under the terms of contract as between the Cigar Makers' International Union and The Union Labor Life Insurance Company for all members, except Class B, who have complied with the laws and requirements appertaining to the payment of dues and assessments in such amounts as provided in these laws.

> "An individual certificate of insurance showing: (A) Amount for which he is insured; (B) Beneficiary; (C) Total and permanent disability provision; (D) Conditions under which insurance terminates; (E) Conversion options; shall be issued to each member so insured.

"This certificate of insurance shall become effective under these provisions immediately on the issuance of such certificate by the insurance company."

In April or May, 1933, by a referendum vote of the membership of the union, taken in accordance with its constitution, the above quoted section and the only other section referring to a death benefit were wholly eliminated, leaving no provision for a death benefit or life insurance. Mr. Floyd voted against this change and never afterwards expressly consented to it, though he remained a member and paid his dues at the lower rate which went into effect very soon after the change.

The evidence shows that the death benefit was abolished because the reserve fund of the union had fallen below the required minimum, its membership had greatly diminished to less than ten thousand, of whom the average age was about sixty-seven years, and the continuance of the death benefit would have required an immediate, considerable assessment upon the members and greatly increased and increasing dues. In the opinion of the officers this would have meant the speedy end of the organization as a labor union. That they were right is indicated by the fact that while the membership had been rapidly decreasing before the change was made, it soon afterwards more than doubled.

The defendants contend that because of this change there was no death benefit in force between the union and Mr. Floyd at the time of his death, and the plaintiff contends that by reason of the above quoted section 70 of the constitution there was, in 1932, a contract between them for such death benefit in the amount of $300 and that this contract remained in force to the death of Mr. Floyd, because it could not be annulled or altered without his consent.

The testimony clearly shows that he joined the union in 1880 and continued to be a member to the time of his death; that at the time when he joined there was no provision, by

the constitution or otherwise, for any death benefit or life insurance; that in 1884, by vote of the membership, a provision for a death benefit, similar to that in force in 1932 except that the amount of it was $100, was inserted in the constitution; and that such a provision continued to exist until 1933, but with amounts varying from $100 to $550.

In 1928, the union entered into a contract with an insurance company by which the latter agreed to pay the benefits which would accrue, under the provision then in force, to the beneficiaries of members dying during the next succeeding year. Such a contract was made each year, for the varying amounts provided from time to time in the constitution, until 1933, when the custom of obtaining such contracts was abandoned because the expense had become too great. While the custom was in force, the insurance company issued benefit certificates to the respective members of the union, each one covering one year. One of these, issued on January 1, 1932, and providing that in case of the death of John H. Floyd during the year 1932, $300 would be paid to the plaintiff in this case as his beneficiary, was introduced in evidence. No certificate was issued covering the year 1933, in which he died.

There was no evidence that he ever made application to the union for any death benefit, or that he ever received any benefit certificate or insurance policy issued by the union itself, or that there was ever any contract between them with reference to a death benefit or insurance, except such as might result or be implied from his membership in the union and from its constitution, which by its terms was subject to change by the action of its members taken in certain prescribed ways.

The union was not a fraternal benefit society, like the Modern Woodmen of America and a great many others. On the contrary, it was a labor union, the preamble of its constitution reciting the necessity of organization "for the amelioration and final emancipation of labor." Its main

purpose was obviously the protection and advancement of the interests of its members as laborers in the cigar-making industry throughout this country. As incidental or related to this main purpose, they were from 1884 to 1933, entitled by its constitution, as changed from time to time in accordance with its financial condition and other varying conditions, to not only strike benefits, out-of-work benefits and traveling loans, but also to sick benefits and death benefits,

That these last benefits were only incidental and contingent upon the varying financial and other conditions of the union appears clearly from the evidence, especially the facts that there were no such benefits at all when Mr. Floyd became a member nor for about four years afterward, that from that time on they varied greatly in amounts, and that in 1933 they were entirely abolished, all by amendments made by referendum votes in accordance with the constitution of the union and without regard to the consent of any particular member or members whose interests might be adversely affected.

The attorney for the plaintiff seems to rely strongly on the case of *Nagle* v. *Perkins*, 130 Misc. 808; 224 N. Y. Supp. 575, in which the executor of the will of a member of this same union was held to be entitled to collect from the union the amount of a death benefit of $500. This was the amount which, according to the constitution in force when the testator died in 1927, was payable as a death benefit to his beneficiary thereunder. The only question at issue was whether the execution by the member of a will in which he bequeathed all his property to his children and named the plaintiff as executor was such a designation of a beneficiary as would enable the plaintiff to collect this death benefit. The court, in the opinion cited, decided that it was such a designation.

It said substantially that the death benefit of $500, then provided for in the constitution, was equivalent to an ordinary life insurance policy for the same amount. But this was said with reference to the right of the insured to name a

beneficiary and to the manner in which that right could be exercised. It had no reference to the question involved in the present case, which is whether a majority of the members, acting in accordance with the constitution, had the power to change it so that there would be no provision for any death benefits to members and thus prevent any death benefit from being payable on the subsequent death of a member of the union.

That question was in no way involved in the New York opinion, which was by the city court of Buffalo, a tribunal far down in the scale of New York courts, and which is therefore entitled to very slight weight as a precedent. It gives no support to the plaintiff's position in the present case.

The other cases cited in the brief for the plaintiff as supporting her claim, *Olson* v. *Modern Woodmen of America*, 182 Ia. 1018, 164 N. W. 346, and *Ayers* v. *Grand Lodge, A. O. U. W.*, 188 N. Y. 280, are easily distinguished from the present case. In each of them, the action was brought to enforce a benefit certificate issued by a fraternal benefit society, the main purpose of which was to insure the lives of its members, and the certificate was issued on a written application therefor by a member and contained a promise by the society to pay to the beneficiary a certain sum of money upon the member's death. There was thus a definite written contract, constituted by the application and the benefit certificate, for the payment of a fixed sum. The member having agreed in his application to be bound by the constitution or articles of association and the by-laws and rules, which might be adopted by the society, the question was whether the society by changing its by-laws or rules could legally make a material change, to the detriment of the insured, in its agreement to pay the death benefit; and it was held that it could not.

There is much conflict of authority as to whether that is the correct rule to be applied in such cases; but, aside from that, it is clear to us that the rule has no application to the

present case. Here the body involved is not such a society as was involved in the above cases, but is a labor union, the main purpose of which has always been the protection of the interests of its members as employees and not insurance in any form. At the time when Mr. Floyd became a member, there was no provision whatever for death benefits nor was there at the time of his death. During most of the intervening time there was such a provision, which varied according to the condition of the union, financial and otherwise, and was at all times subsidiary to the main purpose of the union. There was no evidence that he ever made any application for a benefit certificate for the payment of a death benefit, or that he ever had any such certificate, issued by the union, or that there was ever any definite or express contract for the payment of any death benefit.

It is our conclusion that he had only such rights as the constitution of the union provided from time to time for the members of his class, and that these rights, so far as death benefits were concerned, could be changed or annulled at any time by any change made in the constitution by the union, in accordance with the provisions for amendment contained in the constitution itself. This conclusion is strongly supported by the opinion of this court in *Grant* v. *Providence Permanent Firemen's Relief Association*, 53 R. I. 201, and the cases cited therein.

As there was at the time of Mr. Floyd's death no provision in the constitution of the union for the payment of a death benefit, the plaintiff has no right to recover any such benefit by reason of his death, and we see no reason for setting aside the decision of the trial justice to that effect.

Plaintiff's exception is overruled and the case is remitted to the superior court with direction to enter judgment on the decision for the defendants.

*Joseph T. Witherow*, for plaintiff.

*Cooney & Kiernan, John P. Cooney, Jr.*, for defendant.