## SOVEREIGN CAMP, W. O. W. v. DAVIS.
### (No. 8588.)

(Court of Civil Appeals of Texas. Galveston. Dec. 5, 1924.)

**1. Continuance ⬅26(6)—Application for continuance to secure testimony of absent witness held properly overruled.**

Application for continuance to secure testimony of absent witness was properly overruled, under Rev. St. art. 1918, though it constituted a first application, where suit was filed more than six months before issuance of subpœna for witness, which was not done until only five days before trial, and no other effort was shown or any excuse given for failure to sooner make effort to either have witness in court or get his deposition.

**2. Continuance ⬅26(1)—Does not follow as matter of right, though application is first one under statute.**

Continuance to secure testimony of absent witness does not follow as a matter of right, under Rev. St. art. 1918, though application is the first one, without reference to whether any diligence had been used to procure testimony.

**3. Continuance ⬅46(4)—Properly denied where allegation as to what was expected to be proved by absent witness merely stated a conclusion.**

In action on insurance policy based on presumption of insured's death by absence, continuance was properly denied, under Rev. St. art. 1918, to secure testimony of absent witness, since allegation, that witness was in a position to and that defendant expected to prove by him that insured was alive several years after his disappearance, stated merely a conclusion.

**4. Continuance ⬅46(4) — Application must show that testimony to be given by absent witness is competent, relevant, and admissible.**

To meet requirements of Rev. St. art. 1918, as to continuance to secure testimony of absent witness, it is necessary for application to show that testimony expected to be given is competent, relevant, and admissible.

**5. Death ⬅4—Evidence held to show insured died day he disappeared.**

In action on insurance policy based on presumption of insured's death by absence, evidence *held* to support finding that insured died the day he disappeared.

**6. Insurance ⬅819(2)—Beneficiary held entitled to recover on certificate where insured in good standing when he disappeared.**

Where clause in insurance certificate providing that disappearance of insured for any length of time should not be sufficient evidence of his death until proof had been made of insured's death while in good standing, was void under Rev. St. art. 5707, proof that insured was in good standing when he disappeared, and that beneficiary continued paying his dues until they were declined by insurer, who thereon sus-

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

pended insured, entitled her to recover on certificate.

**7. Insurance ⊂⇒750—Insurer held not entitled to declare suspension of certificate for failure to pay dues where refusing to accept them when seasonably tendered.**

In action on insurance certificate, based on presumption of insured's death by absence, insurer could not properly refuse to accept dues when seasonably tendered by beneficiary, and thereon immediately declare a suspension for failure to pay them.

·Appeal from District Court, Galveston County; Robt. G. Street, Judge.

Action by Mrs. Bessie Davis against the Sovereign Camp of the Woodmen of the World. Judgment for plaintiff, and defendant appeals. Affirmed.

D. J. Wilson, of Galveston, for appellant.
W. T. Armstrong and W. E. Cranford, both of Galveston, for appellee.

GRAVES, J. Appellee sued appellant for $1,000 claimed to be due her as beneficiary under a certificate of insurance issued by it October 19, 1910, on the life of her husband, George W. Davis, alleging that he disappeared November 6, 1913, without leaving word as to his whereabouts with any known person, had not since been heard from, and that he was dead, having died on or about the date of his disappearance, being at the time in good standing with appellant.

The general issue having been joined between the parties, trial before the court without a jury was had, resulting in a judgment in appellee's favor for the amount sued for, with interest and costs, from which appellant presents this appeal. The court below filed these conclusions of fact and law:

"Facts.

"(1) The policy or certificate of the defendant declared upon was introduced in evidence.

"(2) The insured was in good standing and all dues paid at the time of his disappearance November 6, 1913.

"(3) The plaintiff beneficiary continued to pay the dues until the officers of the company refused to receive them.

"(4) Diligent search has been made for the insured both by the plaintiff and by the defendant. Nothing whatever is known or has been heard of him since his disappearance except that his purse was found at Virginia Point on Galveston Bay shortly after his disappearance.

"(5) He never paid over the money realized on sale of cattle to the owner.

"(6) He is dead. Died November 6, 1913.

"Law.

"The clause requiring continuance of payments after disappearance of insured is unreasonable and void. The insured is presumed to be dead. The law is for the plaintiff; judgment accordingly.

"The defendant excepts to the conclusions both of law and fact."

[1, 2] Appellant's first contention here is that the trial court 'erred in overruling its application for a continuance, grounded on the want of the testimony of the witness J. A. Libby, it being its first application; no proposition is presented as to that of any other witness.

The allegation with reference to what was expected to be· proved by Mr. Libby was as follows:

"That the said J. A. Libby is a resident of Galveston, Galveston county, Texas; that he is in a position to, and defendant expects to prove by him the fact that said George W. Davis is or was alive at least as late as the year 1917 or 1918."

The court qualified the bill of exceptions taken to the overruling of the application, in so far as affected this witness, with this statement:

"That the statement in respect to the facts expected to be proved by the witness, J. A. Libby, * * * was inadequate and incomplete, and not such a statement of the facts expected to be proved by said witness as required by the statute governing the first application for continuance."

We conclude that no reversible error is shown; it is true the application was the first one, but that does not mean, under R. S. article 1918, that the continuance follows as a matter of right without reference to whether any diligence has been used to procure the testimony. It does not appear that due diligence was used in this instance; the suit was filed January 8, 1923, more than six months before the issuance of the subpœna for this witness, which was not done until July 18, 1923, only five days before the trial; the application for the continuance filed and overruled on the same day of the trial on July 23, alleged the witness to be a resident of Galveston county, and that the sheriff's return on the process for him simply recited that he could not be found. No other effort is shown, nor any excuse or reason given for failing to sooner make effort to either have the witness in court or get his deposition; this alone was sufficient reason for overruling the application. Railway v. Robinett (Tex. Civ. App.) 54 S. W. 263; Railway v. Wheat, 68 Tex. 133, 3 S. W. 455.

[3, 4] Neither are we prepared to hold unsound the quoted reason given by the court for its action; of course, testimony to the fact that Davis was alive as late as 1917 or 1918, such as that he was seen or otherwise known to be then alive, would have been material, and at first blush this averment might seem to import that, but upon the second reading it at least becomes uncertain and ambiguous, appearing rather to state merely

a conclusion; that is, that the witness was in a position to and would establish that the insured was alive at the time mentioned, none of the facts to which he would testify and from which it might be shown that he was in such a position being stated; if present, he could only have testified to facts within his knowledge, such as that he had seen Davis alive during the period involved, or personally knew some other particular fact from which it might properly be inferred that he was, and, in order to meet the requirements of the statute, it was necessary for the application to show that the testimony he was expected to give was of that character; was competent, relevant, and admissible; Hazelrigg v. Naranjo (Tex. Civ. App.) 184 S. W. 316; Alexander et al. v. Brown (Tex. Civ. App.) 29 S. W. 561; Belknap v. Groover (Tex. Civ. App.) 56 S. W. 249, affirmed 93 Tex. 635; East Texas Land & Improvement Co. v. Texas Lumber Co., 21 Tex. Civ. App. 411, 52 S. W. 646; Earl et al. v. State, 33 Tex. Civ. App. 161, 76 S. W. 207; writ of error denied by Supreme Court.

The trial court's finding of fact that the assured "is dead; died November 6, 1913," is next attacked as being without support in the evidence, it being insisted that the only testimony upon the matter is to the effect that on that date he was alive and well.

A full resumé of the testimony upon which this finding rested is thus copied from appellee's brief.

"Mrs. Bessie Davis, the wife of the insured, and the beneficiary in the certificate sued upon, testified that she was married to the insured in 1902 at Arcadia, Tex., and that they lived there something like a year, and moved to Hitchcock, where they lived three years, and from there they moved to Algoa, Tex., where they lived seven years; that the last time she saw her husband was on the morning of the 6th of November, 1913, when he left his home and said he would be back that night. He stated that he was going to Houston to pay for a span of mules which he had sold for a man, and that he was going there to give the money to the man who owned the mules and to whom the money belonged; that she has not heard from him since that time. She stated that before his disappearance he did not stay away from her for any extended periods except when he had to go away to attend to business, and that they had two children at the time of his disappearance, and a third child was born three months after his disappearance; that his attitude towards her and the children was very affectionate. She stated that about the date of the alleged disappearance of the insured, George W. Davis, one Dr. Bute purchased certain mules and other live stock from said George W. Davis and paid him therefor, said mules and said live stock not being the property of said George W. Davis; at said time the said George W. Davis stated to said Dr. Bute that he was going to Houston, Tex., to account to the true owner for the proceeds of said mules and other live stock, but that he never did so, and never accounted to the true owner of said mules and live stock for the proceeds thereof. His purse and other belongings were found in an opposite direction from Houston, to wit, at Virginia Point in Galveston county, Tex.

Mrs. Davis testified that she did all she knew how to do to locate her husband, the insured; that she wrote to different friends of hers and to the Woodmen of the World, who advertised in the paper for her husband.

Mrs. Nannie May Hill, a married daughter of the plaintiff, testified that she recollected her father; that at the time of his disappearance the family was living at Algoa; that she has not seen nor heard from her father since the day he left; that her father was affectionate towards her mother, and they were affectionate towards each other; that he was in the habit of playing with his children when he returned home from his work, and that she never knew him to stay away from home for any great period of time; that he was very seldom away, and usually came in from the farm at about six o'clock.

Henry McKay testified that he resided at Algoa and had lived there for 14 years; that he knows Mrs. Bessie Davis, and knew her husband, George W. Davis, in his lifetime quite intimately, and knew him up to the time of his death or disappearance; that during the time he knew him he usually saw him two or three times a week; that he observed him around his family, and knew him very well, and he thought the affection the insured had for his family was his big redeeming feature; that he was always very affectionate with his family, especially his little girl, who testified; that it was not his habit to leave the community and stay away during a great period of time during the time he knew him; that he was employed by Mr. Summerfield on a farm there, and never knew him to be off except to go fishing for two or three days; he was a fair worker, and was cultivating an orange and fig orchard for Mr. Summerfield, who lived in Dallas; that he has not heard from him nor talked with any one who has seen him or heard from him since his disappearance. He stated that he knew Mr. Davis from the time he come to Texas; that is, 14 years ago, up to the time of his disappearance. He stated that he knew Mr. Davis intimately.

"A. B. Wilmen, a witness for the plaintiff, stated that he knew George W. Davis during his lifetime, and had occasion to observe him with his family; that he was a man who thought a good deal of his family, was very affectionate towards his children, and, in fact, more affectionate than the average man is. He stated that he recollected Davis' disappearance; that he stayed in Davis' house for three months at one time, and during that time he and Davis had a fishing trip or two together, and once they went to Houston together, and that he went away on business once in a while; that Davis was not frequently away from home at night.

"W. F. Dyer, a witness for the plaintiff, testified that he is a member of the Woodmen of the World, and recollects George W. Davis and knew Mrs. Davis, the plaintiff; that they lived in Arcadia part of the time he knew them and up around Algoa. He stated that Mr. Davis was a member of the Peachtree Camp of the Woodmen of the World, and that he recollected the time of Davis' disappearance; at that time

he was camp banker. He stated that he individually tried to locate Mr. Davis after his disappearance, and could not find him. He stated, 'We advertised for him in the Woodmen paper, in the Sovereign Visitor, a Woodmen paper, but we could never get any trace of him whatever. We did something more than advertise. There were quite a few men who traveled and looked for him, but no one ever saw him or heard anything from him.'

"J. L. Belch, a witness for the defendant, testified that he lived at Arcadia, with the exception of 2 years, for about 15 years, and that he had occupied positions with Peachtree Camp No. 1181, Woodmen of the World, at Arcadia, Tex.; that he is clerk at the present time, and was clerk of the Woodmen of the World during December, 1914. On cross-examination he testified that he recalled the time Mr. Davis disappeared and that the Woodmen of the World made some investigation trying to locate him; advertised for him, and that they never heard anything of him; that he did not know who found Davis' purse at Virginia Point; that they never could find that out; that they tried to find it out; that there was a committee appointed to go and investigate the business, and that he was one of the committee; that they went to Houston to see about it, to find out who it was that gave the pocketbook to Mr. King, the clerk of Magnolia Camp, and that they did not and could not find out who the man was that first found it."

[5] Under the recent case of Woodmen of the World v. Piper (Tex. Civ. App.) 222 S. W. 649, writ of error refused October 27, 1921, as shown in 112 Tex. 635, we think this testimony was amply sufficient to support the finding, and overrule the assignment.

The concluding assignments call in question the conclusion of law upon several grounds: (1) There is no evidence showing either that the insured is dead, or that he was in good standing with appellant at the time of his death, nor any that proofs of his death were submitted to it, all as required by the terms of the certificate of insurance sued upon. (2) No presumption of the insured's death arose under the facts here appearing; that is, his disappearance with a substantial sum of money belonging to another, which was never accounted for to the owner, and the finding of his purse at Virginia Point, a direction opposite both to that in which he advised his wife he was going and in which the owner of the money resided. (3) The clause in the certificate of insurance requiring continuance of payments after the disappearance of the insured is not unreasonable and void under the terms of R. S. art. 5707, but is both reasonable and valid, at least until the expiration of the seven years therein mentioned, because no presumption of death arises, under the statute, until after seven years, and since the certificate to the provisions of which he agreed in accepting it, requires the insured to be in good standing at the time of his death, it is a lawful and binding provision to require the pay-

ments to be made after disappearance for at least the statutory period, seven years.

[6] The clause in the certificate here involved reads as follows:

"The absence or disappearance of the member from his last known place of residence for any length of time shall not be sufficient evidence of the death of such member, and no right shall accrue under his certificate of membership to a beneficiary, nor shall any benefits be paid until proof has been made of the death of the member while in good standing."

The undisputed evidence further showed that Davis was in good standing when he disappeared November 6, 1913; that his wife continued paying his dues for one year thereafter; that is, up to December, 1914, and tendered payment of them for that month, but it was declined, and the insured was suspended for failure to pay his dues of $1.25 for that month.

None of these contentions can be upheld; it will be noted that in this instance appellant cited no provision of its certificate, bylaws, or constitution, specifying that, in case of disappearance, payment of dues should continue for any length of time—at least seven years—as a prerequisite to any recovery under it, but merely the quoted clause, which in effect simply nullifies the plain provisions of R. S. article 5707, to the contrary; but under the holding in the Piper Case, supra, where both of these requirements did expressly appear, the legal effect would not have been different anyway.

In that case the court expressly held such requirements invalid, saying upon the point:

"The provisions in the laws of appellant against absence or disappearance of a member from his residence and unheard of for any length of time, being held to be evidence of the death of such member, are null and void. No corporation can, by a provision in its regulations, set aside a law of Texas, and make rules of evidence to suit its own ends and desires. No such preposterous and dangerous authority has ever been granted to a corporation in Texas, or tolerated by its courts, and when beneficiaries are compelled to sue a fraternal association in order to obtain insurance due them they cannot be met by rules of evidence formulated by such association which practically repeal rules made by a Legislature of Texas. Mystic Circle v. Hoskins, 171 S. W. 812; W. O. W. v. Robinson, herein cited."

Indeed, under the undisputed state of the evidence here, we think the Piper Case settles all the questions raised by appellant adversely to it; there the identical provision by which it sought to set aside the statutory presumption arising from the seven years disappearance was under construction; under the effect of that law it was not only held that disappearance for seven years in such circumstances as here appeared constituted proof of death, but also that it occurred on or about the date of the disappearance; it

further determined that suspension of the insured after the date of his disappearance was ineffective, and that the refusal to entertain a claim under the certificate on the ground that proof of disappearance did not constitute sufficient proof of death was wrongful.

[7] It furthermore goes without saying that appellant could not properly refuse to accept any further dues when seasonably tendered and then immediately declare a suspension for the failure to pay them, since that would amount to taking advantage of its own unjustified conduct.

From these conclusions, it follows that the trial court's judgment should be affirmed. That order has been entered.

Affirmed.