MOLLIE SHAPIRO, Appellant, *v.* INDEPENDENT ORDER, BRITH ABRAHAM OF UNITED STATES OF AMERICA, Respondent.*

Supreme Court, Appellate Term, Second Department, March 28, 1935.

* Revg. 154 Misc. 85.

*Milton Wiesenberger* [*Jacob Zelenko* of counsel], for the appellant.

*Leon Sanders* [*Jacob N. Geffen* of counsel], for the respondent.

LEWIS, J. This action is brought to recover on a certain benefit certificate issued by defendant to plaintiff's husband.

The case was tried on an agreed statement of facts as set forth in the opinion below (154 Misc. 85). From such stipulation it appears that on October 15, 1900, defendant, a fraternal insurance corporation, issued its membership certificate to one Morris Shapiro, providing for the payment of $500 to the beneficiary named therein upon the death of the insured; that on December 7, 1926, Morris Shapiro disappeared from his home and has been unaccountably absent ever since; that on July 2, 1934, the insured's absence had continued seven years, and he was presumed by law to be dead; that on July 23, 1934, plaintiff served upon defendant a certified copy of a decree duly entered in the Surrogate's Court of Queens county, declaring Morris Shapiro legally dead, and requested payment of benefits to her as beneficiary under the certificate; that the insured was a member in good standing, all assessments having been fully paid until the commencement of this action; that in 1928 defendant adopted the following by-law, upon which the defense is predicated, viz.: " No time of absence or disappearance on the part of the member without proof of actual death shall entitle his beneficiary or beneficiaries to receive the benefits hereinafter provided for; " that the constitution and by-laws of defendant further provide that no death benefit shall be payable until the claimant shall have complied with all the requirements of the by-laws. Though it does not appear from the stipulated facts whether the insured had pledged submission to future amendments or changes in the constitution and by-laws of defendant, the certificate in suit so provides. Moreover, the power of retroactive amendment has been recognized by statute (Ins. Law, § 232, added by Laws of 1911, chap. 198).

Pursuant to the above-quoted by-law, defendant insists upon direct, rather than presumptive, proof of Morris Shapiro's death. The trial court sustained the defense and held this by-law to be a bar to plaintiff's recovery.

The questions are whether a by-law, such as the one here involved, which seeks to set aside a rule of evidence based upon public policy, is valid; and whether the by-law, even if valid, is not an unreasonable exercise of the reserved power of amendment as applied to the insured, and, hence, inoperative. The precise problem appears to be of novel impression in this State; but there are many well-considered cases in other jurisdictions, dealing with similar by-laws,

based upon reasoning which seems to leave no doubt as to the proper determination of this controversy.

The authorities on the subject are not all in accord, but they may be classified as follows:

(1) Those which hold that where the presumption of death from seven years' absence finds statutory expression, such enactment declares the public policy of the State, and any contract which is opposed to that policy will be deemed invalid. (*Modern Woodmen* v. *Hurford*, 193 Ky. 50; 235 S. W. 24; 21 A. L. R. 1340; *Modern Woodmen* v. *Michelin*, 101 Okla. 217; 225 P. 163; 36 A. L. R. 971; *Cobble* v. *Royal Neighbors*, 291 Mo. 125; 236 S. W. 306; 21 A. L. R. 1346; *Sovereign Camp, W. W.,* v. *Davis*, [Tex. Civ. App.] 268 S. W. 523; *Sovereign Camp, W. W.,* v. *Piper*, [Tex. Civ. App.] 222 id. 649; *McCormick* v. *Woodmen of World*, 57 Cal. App. 568; 207 P. 943; *National Union* v. *Sawyer*, 42 App. D. C. 475; *Fleming* v. *Merchants' L. Ins. Co.*, 193 Iowa, 1164; 180 N. W. 202.) In the last-cited case, where the presumption of death was not created by statute, but existed by virtue of the common law alone, a by-law providing that "disappearance or long-continued absence of the member unheard of shall not be regarded as evidence of death or of any right to recover," was held invalid, as depriving the court of its judicial function, and as unreasonable and against public policy.

(2) Those which hold that by-laws doing away with the presumption of death from seven years' absence, adopted after the benefit certificate had been issued, though the member undertook to be bound by subsequent laws, are unreasonable and, therefore, ineffective. (*Modern Woodmen* v. *White*, 70 Col. 207; 199 P. 965; *Haines* v. *Modern Woodmen*, 189 Iowa, 651; 178 N. W. 1010; *Olson* v. *Modern Woodmen*, 182 Iowa, 1018; 184 N. W. 346; *Hannon* v. *Grand Lodge, A. O. U. W.*, 99 Kan. 734; 163 P. 169; *Samberg* v. *Knights of Modern Maccabees*, 158 Mich. 568; 123 N. W. 25; *Boynton* v. *Modern Woodmen*, 148 Minn. 150; 181 N. W. 327; *Garrison* v. *Modern Woodmen*, 105 Neb. 25; 178 N. W. 842; *Roblin* v. *Supreme Tent, K. M.*, 269 Penn. St. 139; 112 A. 70; *Sovereign Camp, W. W.,* v. *Robinson*, [Tex. Civ. App.] 187 S. W. 215; *Supreme Ruling, F. M. C.,* v. *Hoskins*, [Tex. Civ. App.] 171 id. 812; *Sweet* v. *Modern Woodmen*, 169 Wis. 462; 172 N. W. 143.)

(3) Those which hold that the statutory or common-law rule of presumption as to death is merely a rule of evidence, in which there is no vested right, and that parties by their agreement may change such rule without offending the public policy of the State in which the contract is enforced. (*Steen* v. *Modern Woodmen*, 296 Ill. 104; 129 N. E. 546; 17 A. L. R. 406; *McGovern* v. *Brother-*

*hood of Firemen & Engineers*, 31 Ohio C. C. 243; affd., 85 Ohio St. 460; 98 N. E. 1128; *Porter* v. *Home Friendly Soc.*, 114 Ga. 937; 41 S. E. 45; *Becker* v. *Interstate Business Men's Acc. Assn.*, 265 Fed. 508; *Mays* v. *Sovereign Camp, W. O. W.*, 151 Tenn. 604; 271 S. W. 34; 40 A. L. R. 1266, citing other cases, including *Kelly* v. *Supreme Council*, 46 App. Div. 79.)

The rule as to the circumstances under which seven years' unexplained absence shall be deemed to raise a presumption of death is well settled in this State and has been confirmed by statute (Civ. Prac. Act, § 341). This almost universal rule arises from human experience and rests upon a sound public policy. It was adopted as a rule of necessity so that the rights of the living might not be held in abeyance indefinitely on account of the absence of a person of whom no trace could be found. (*Matter of Wagener*, 143 App. Div. 286, 288.) A complete statement concerning the origin and history of our present statute is contained in *Matter of Board of Education of N. Y.* (173 N. Y. 321).

In the instant case there is no dispute that the plaintiff would be entitled to recover were it not for the adoption of the challenged by-law. As indicated, the authorities are not in harmony on the question of the right and power of a fraternal benefit society or corporation to enact such provisions. It has been said that, " All contracts or agreements which have for their object anything which is repugnant to justice, or against the general policy of the common law, or contrary to the provisions of any statute are void " (*Bell* v. *Leggett*, 7 N. Y. 176, 179; cited with approval in *Pope Manufacturing Co.* v. *Gormully*, 144 U. S. 224, 235); and that this public policy, if not controlled by the Constitution, treaties or laws of the United States, or by the principles of the commercial or mercantile law or of general jurisprudence, is governed by the laws of the State as disclosed by its Constitution or statutes, or by the decisions of its highest courts. (*Hartford Ins. Co.* v. *Chicago, M. & St. P. R. Co.*, 175 U. S. 91, 100; 20 Sup. Ct. 33; 44 L. Ed. 84.) (See, also, 13 C. J. § 397, p. 455.)

The court below relied mainly on the authority of *Kelly* v. *Supreme Council* (46 App. Div. 79, First Dept.) where it was held that the parties had a legal right to agree upon a by-law practically identical with the instant one and that it was not invalid, as repugnant to law or against public policy, though setting aside the rule of evidence as to the presumption of death from seven years' absence. In view of the conclusion which we have reached, however, it is unnecessary to pass upon the broad doctrine enunciated in that case, which will be referred to again presently. Nor need we inquire whether some of the decisions cited in class (1), *supra*,

invalidating similar by-laws as opposed to public policy, have gone too far. The principle applicable to the instant case seems plain.

We may assume for the purposes of this case that the defendant had a right to enact the by-law in controversy and that it bound all who became members after its adoption. Coming to the precise issue, upon which we rest our decision, the question is whether the assailed by-law is reasonable as applied to the certificate in suit; and admittedly that is the only question before us.

It is the general holding of the courts that a reservation of power in a mutual benefit insurance company to make retroactive provisions or amendments, or the consent of the assured to be bound by future by-laws or changes, must be construed so as to permit only reasonable enactments and not such as would destroy or materially alter substantial rights under the certificate, or render it impossible under certain circumstances for the beneficiary to recover. The guiding principle was stated by Judge CARDOZO (then a member of our Court of Appeals) in the case of *Steuernagel* v. *Supreme Council of R. A.* (234 N. Y. 251, 257) as follows: " We assume that even under such a contract, the power of amendment is not exempt from all restraint. The cases sometimes say that the power will not be extended so as to destroy a vested right. [Citations.] What is meant is that the change must be reasonable in nature and degree. * * * The distinction is between an amendment transforming the contract of membership in its fundamental scheme and purpose, and one affecting merely the forms and methods of administration, the course of practice and procedure, things incidental and subordinate rather than primary and essential." The by-law there under consideration made every member of the association subject to suspension in the event of his disappearance, provided the approval of a certain committee was obtained first and a prescribed notice of suspension was sent to the missing member's last known address. Some time after the issuance of plaintiff's certificate, the by-law was amended so as to dispense with the committee's approval. Plaintiff sought to defeat his suspension, claiming that it was necessary for the defendant to comply with the by-law as it existed when he joined the order and concededly the committee's approval had not been obtained. It was held that the amended by-law was binding on the plaintiff who " knew when he accepted the certificate that he was subject to suspension in the event of his disappearance." The opinion, however, further states (at pp. 257, 258): " Some courts have held that suspension is effective even though the by-law that permits it is adopted after admission of the member (*Royal Arcanum* v. *Vitzthum*, 128 Md. 523; *Steen* v. *Modern Woodmen of*

*America,* 296 Ill. 104). We are not required in the disposition of the case at hand either to approve that ruling or to condemn it. This contract was made in view of suspension as a possible contingency, and its essence was not impaired by a change of the agencies that were to give effect to its conditions." That case lends no support to the conclusion of the court below that the instant by-law constitutes a reasonable change in its application to previously issued certificates.

To review the many adjudications on the subject would unnecessarily prolong this opinion. Most of the decisions are collated (17 A. L. R. 418 *et seq.*), with the comment (at p. 424) that by the weight of authority, subsequent by-laws which eliminate the presumption of death from seven years' absence, though the member undertook to be bound by such enactments, have been held unreasonable and, therefore, ineffective. In some of these cases the by-law was passed after the issuance of the certificate but before the insured's disappearance. In the present case, as appears from the stipulated facts, the by-law was adopted twenty-eight years after the certificate had been issued and about two years after the insured had disappeared, so that the latter may not be said to have known that the by-law existed. It will suffice to mention a few of the holdings which, in our opinion, represent the better-reasoned view.

In discussing the right of a society to enforce a similar by-law, the Iowa Supreme Court, in the case of *Olson* v. *Modern Woodmen* (*infra,* 182 Iowa, 1018; 164 N. W. 351), stated: " An insurmountable barrier is placed by this amendment in the way of recovery, because the condition on which recovery rests (death) is incapable of proof, under this amendment. Eliminating this seven-year rule, and destroying its efficacy as proof of death, the payment of the premium is postponed until twenty-six years after his disappearance, and the burden placed upon the assured of paying the premium during all these years, to secure the benefits of the certificate. There is no presumption as to when he died, arising from the proof of absence. The law steps in at the end of seven years, proper proof attending his absence being disclosed, and says that he is now dead. His policy is mature. His beneficiary has a right to recover. Though this rule has its foundation in reason, and is founded upon a knowledge of the ways of men, yet the amendment says to the plaintiff, ' You cannot recover on such proof until twenty-six years have elapsed after the disappearance,' thus casting on plaintiff the burden of paying all dues and assessments during that time, and thereby making the certificate practically worthless." It will be noted that in the *Olson Case* (*supra*) as in nearly all of the decisions

dealing with the question under consideration, the contested by-law did not entirely abolish the presumption in relation to absence without tidings, but merely extended the seven-year period under the common-law or statutory rule through the full term of the member's life expectancy according to certain mortality tables. Here there is no limitation of time, which makes our conclusion even more compelling. Whether a provision fixing a definite period somewhat longer than seven years' absence would be reasonable we need not consider.

In *Haines* v. *Modern Woodmen* (189 Iowa, 651; 178 N. W. 1010, 1016) it is stated: "Permit the insurer, by its own arbitrary act, to declare that it will not pay the benefit upon such legitimate proof as will satisfy a court of justice of a member's death, nor will it pay at all, except upon performance of a condition which cannot be satisfied in an average lifetime, and then only on the further condition that, during all such period, the beneficiary shall continue to pay a burdensome tribute into the insurer's treasury, and you will leave nothing of value in a contract of fraternal insurance of which the member may not be 'fraternally' despoiled, at the uncontrolled will or whim of the insurer."

The facts in the case of *Cobble* v. *Royal Neighbors* (291 Mo. 125; 236 S. W. 306) forcibly demonstrate the unreasonableness of a similar by-law. There the insured was thirty-nine years of age when he took out the benefit certificate, and plaintiff, his wife and beneficiary, was about a year older. Hence, her expectancy in life was less than his, and according to mortality tables the beneficiary would predecease the insured. Thus, said the court, plaintiff would be "absolutely deprived of the very provisions for her relief which was intended by the insured in the first instance in taking out said benefit certificate and making her the beneficiary therein."

Perhaps the leading exposition of the minority view is the opinion of the Illinois Supreme Court in the case of *Steen* v. *Modern Woodmen* (296 Ill. 104; 129 N. E. 548), to the effect that such a provision is valid and reasonable on the theory that it does not eliminate the presumption of death on account of disappearance and continued absence, but merely supplants conjecture by actual experience in the form of mortality tables. There being no vested right in a rule of evidence, it is said that "no good reason is perceived why the same tables may not be accepted as furnishing ground legally to presume the death of a person after the lapse of the period of probable duration of his life, in the absence of any evidence to the contrary." Aside from the fallacy of this line of reasoning, as pointed out in *Modern Woodmen* v. *Michelin* (101 Okla. 217; 225 P. 163), viz.: "It [a table of mortality] is not based upon the length

of lives of men who, like the insured here, left home and were missing for seven years or more, but it is based upon the length of the lives of men, all but a very small percent. of whom stayed at home," the decision in the *Steen Case (supra)* is not at variance with our present holding; for the court there carefully observed, in the course of its opinion (296 Ill. 104, 109; 129 N. E. at p. 548): " It is important that the beneficiary shall in some way be able to tell how many years she will be required to pay dues after the disappearance of the member, so that she may determine the wisdom of keeping the certificate alive or of letting it lapse."

In the case at hand there is no telling how many years the beneficiary will be required to pay dues after the member's disappearance; payment of death benefits is not merely postponed but indeterminately suspended; and though continued payment of dues and assessments is required in order to keep the certificate alive, for all that appears, it may never mature. The provision in question is so drastic in its effect that it goes far beyond the limits allowed even in those jurisdictions which have adopted the so-called minority rule; for this by-law sets aside the presumption of death from seven years' absence and substitutes nothing in its stead.

The ruling in *Kelly* v. *Supreme Council of Catholic Mut. Benefit Assn. (infra,* 46 App. Div. 79, cited with approval in the *Steen Case, supra)* regarding the reasonableness of a practically identical by-law, is inapplicable. There the provision was in force at the time the certificate was issued. No retroactive by-law was involved. This is true also of *Roeh* v. *Business Men's Protective Assn.* (164 Iowa, 199; 145 N. W. 479) and *Becker* v. *Interstate Business Men's Acc. Assn.* ([C. C. A.] 265 Fed. 508), cited in the opinion below. In those cases the by-law, in substance, provided that there should be no liability for the payment of benefits or indemnity on account of injury or death caused by the discharge of firearms unless the accidental character of the discharge be established by the testimony of at least one eye-witness. Such amendment was not adopted subsequently to the issuance of the certificate, but was in existence at the time, and we may assume that the contract was made with that fact in view. The other citations likewise are differentiated in their facts and, therefore, are not in point.

Without discussing all of the cases which hold after-enacted by-laws retroactive in their effect and binding on the assured and his beneficiary, it is sufficient to state that in almost every instance the amendment related to the conduct of the member; was made during his lifetime; was for the benefit of the organization and for the protection of the assured as a member, and was of a character that the assured or his beneficiary could be reasonably required to

conform to — at least, compliance therewith was not impossible. The by-law in this case is not of such a character.

The practical effect of the challenged by-law is to absolve the defendant from any payment whatever under the certificate and to defeat the rights of plaintiff as beneficiary by imposing a requirement which, in the nature of things, cannot be met. The certificate is rendered worse than worthless, because the beneficiary paying the assessments would lose the amount paid. It may be that the defendant has been confronted with a large number of death claims based upon the disappearance and continued absence of members, and that this by-law is intended simply as a protection against fraudulent demands of that kind. But the question here is not merely one of good faith or honesty of purpose. It is rather a question of fairness and contract obligation. The defendant undertakes to insure payment of certain benefits on the death of a member. Death may come in any of its myriad forms, in land and sea disasters, but it cannot always be established by direct proof. The victims cannot be discovered or identified, and there may not be a single witness who can confirm the fact of death. Our lawmakers have given statutory expression to the common-law rule or seven years' absence without tidings, and the Legislatures in most States have done likewise. In the light of all this, what reasonable man of ordinary prudence would subscribe to a provision such as the one in question if its full meaning and significance were known or fairly explained to him?

Accordingly, we conclude that the by-law in controversy may not be said to have been contemplated under the general reserved power of amendment, and that such provision, in its application to this certificate, is unreasonable and inoperative.

Judgment unanimously reversed on the law, with thirty dollars costs to appellant, and judgment directed for plaintiff for the amount claimed, with interest and appropriate costs in the court below.

CROPSEY and MACCRATE, JJ., concur.